UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN DOE, and LAFFERTY ENTERPRISES INC., d/b/a TRANS-STAR AMBULANCE SERVICE, <br><br> Plaintiffs, <br><br> v. <br><br> JAN-CARE AMBULANCE SERVICE, TRI-STATE DIVISION INCORPORATED, <br><br> Defendant. | Civil No. 15-24-ART <br><br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In 2012, two ambulance companies bid for a contract with the Department of Veterans Affairs ("VA"). R. 9 at 10–11. One company, Trans-Star Ambulance Service ("Trans-Star"), was from Kentucky, and the other company, Jan-Care Ambulance Service ("Jan-Care"), was from West Virginia. *Id.* at 2. Jan-Care won the contract. *Id.* at 11. Under the contract, Jan-Care transported patients from a West Virginia VA hospital to different locations in West Virginia, Ohio, and Kentucky. R. 24-2. Initially, Jan-Care hired Trans-Star to conduct the transports in Kentucky, but, in 2013, Jan-Care began performing those transports itself. R. 9 at 11.

In 2015, Trans-Star sued Jan-Care. According to Trans-Star, Jan-Care was filing "false or fraudulent claims" with the VA, in violation of the False Claims Act ("FCA"). R. 9 at 14–16 (citing 31 U.S.C. §§ 3729–3733). Specifically, Trans-Star claimed that the VA contract required Jan-Care to obtain a Kentucky ambulance license and certificate. R. 9 at 9;

*see* 202 Ky. Admin. Regs. § 7:501 (stating licensure requirements for ambulance providers in Kentucky); *see also* KRS § 216B.010 *et seq.* (regulating health services); KRS § 311A.020 *et seq.* But Jan-Care did not have a Kentucky license or certificate. Therefore, according to Trans-Star, Jan-Care was violating the FCA by asking the VA to pay money owed under the contract. *See* R. 9 at 8. Trans-Star also brought state law claims against Jan-Care. Jan-Care moved to dismiss, arguing that Trans-Star failed to state a claim upon which this Court can grant relief. R. 24. Jan Care is correct; thus, the Court will grant its motion to dismiss.

## LEGAL STANDARD

In ruling upon Jan-Care's motion to dismiss, the Court reviews whether Trans-Star's complaint alleges enough facts to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes all facts and draws all reasonable inferences in the plaintiff's favor. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011). But the Court need not accept unwarranted factual inferences or legal conclusions as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). If a plaintiff cannot prove any set of facts that would justify relief on his claim, his complaint must be dismissed. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). In addition, FCA claims, like other fraud claims, must be dismissed if the plaintiff fails to plead them with particularity. *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008) (citing Fed. R. Civ. P. 9(b)).

## COUNTS 1, 2, & 3 – VIOLATIONS OF THE FALSE CLAIMS ACT

The FCA makes submitting "false or fraudulent claims" to the federal government illegal. *Sanderson*, 447 F.3d at 876; *see also U.S. ex rel. Hobbs v. MedQuest Associates,*

2

*Inc.*, 711 F.3d 707, 713 (6th Cir. 2013) (citing 31 U.S.C. § 3729(a)(1) (2006)). False or fraudulent claims can be obvious, like when contractors bill the government for services they did not provide. *See id.* at 714. The contractor can also be liable for less-obvious fraud, called "false certification." *Id.* Under the false-certification theory, a contractor "knowingly falsely certifies that it has complied with a statute or regulation" that "is a condition for Government payment." *Id.* (quoting *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (internal quotation marks omitted)); *see also U.S. ex rel. Wall v. Circle C Const.*, L.L.C., 697 F.3d 345, 356 (6th Cir. 2012).

Trans-Star alleges that Jan-Care violated the FCA under a "false certification" theory. Trans-Star points to a clause in the VA contract requiring Jan-Care to obtain "all necessary licenses and/or permits required to perform this work." *See* R. 24-2 at 29 (quoting without citing 48 C.F.R. § 852.237-70, a VA regulation). Some work under the contract requires Jan-Care to transport patients in Kentucky. And Kentucky requires ambulance companies to have a license and certificate of need to transport patients. *See* 202 Ky. Admin. Regs. § 7:501 (stating licensure requirements for ambulance providers); *see also* KRS § 216B.010; KRS § 331A.030. Therefore, Trans-Star claims, the VA contract requires Jan-Care to have a Kentucky license and certificate of need.[1] Jan-Care had neither. So, the argument goes, Jan-Care violated the contract. And each time Jan-Care asked the VA to be paid for a Kentucky transport, it was falsely certifying that it was complying with Kentucky ambulance requirements. *See* R. 9 at 13.

---

[1] Trans-Star also points to another section in the contract entitled "Personnel Qualifications," which reads "[a]ll contractor personnel performing contract services shall meet the qualifications and be licensed as specified in the contract, as well as any qualifications required by Federal, State, County and local government entities from the place in which they operate." R. 24-2 at 18. However, by a plain reading, this statement applies to human employees, not the company as a whole. And Trans-Star makes no allegation that Jan-Care's drivers or other employees were not qualified or licensed properly.

The FCA, however, does not punish the alleged violation of every government contract provision. *See Hobbs*, 711 F.3d at 717; *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1270 (9th Cir. 1996) (stating that "violation of a law or regulation standing alone is not proof of a false claim"). The FCA punishes the violations only of provisions that are material to the government's decision to pay the contractor. *Hobbs*, 711 F.3d at 714. These material provisions are called "conditions of payment" because the government "conditions" its payments to the provider upon these requirements being met. *Id.* The government can address the violation of non-material provisions through breach of contract claims or administrative remedies. *Id.* at 717; *Hopper*, 91 F.3d at 1265. This makes sense because the FCA's hefty fines and penalties are inappropriate tools with which to police compliance with conditions that do not affect the government's decision to pay. *Hobbs*, 711 F.3d at 717; *Hopper*, 91 F.3d at 1265. Therefore, the question here is whether compliance with Kentucky ambulance regulations is a "condition of payment" under the VA contract. *See U.S. ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1214, 1218 (10th Cir. 2008) (affirming district court's dismissal of FCA claims because the relator did not allege that the defendant violated a condition of payment).

    **A.  Kentucky Licensure Is Not a "Condition of Payment" Under the FCA.**

Courts identify conditions of payment by looking at the applicable contracts, statutes, and regulations. *Id.* The language of the contract, statute, or regulation must condition payment on compliance with the provision for it to qualify as a condition of payment. *See Hobbs*, 711 F.3d at 719. As an example, 42 U.S.C. § 1395y states that Medicare will only pay healthcare providers only for services that are "reasonable and necessary." Thus, that statute makes "reasonable and necessary" a condition of payment for medical services. Here,

Trans-Star cites one provision in the contract—a VA regulation—that Jan-Care allegedly violated.[2]  R. 9 at 8 (citing 48 C.F.R. § 852.237-70 as V.A.A.R. 852.237-70).  The regulation states that contractors "shall obtain all necessary licenses and/or permits required to perform" the work.  48 C.F.R. § 852.237-70.  But the regulation does not say that the VA will not pay the contractor if the contractor does not comply.  *See id.*  Thus, the regulation itself does not make Kentucky licensure or certification a condition of payment.  *See Hobbs*, 711 F.3d at 719.  Trans-Star points to no other language in the contract, regulations, or statutes making Kentucky licensure or certification a condition of payment.  And the Court could find none.

In fact, other language in the contract emphasizes West Virginia ambulance licensure instead of Kentucky licensure.  (The VA facility is located in West Virginia.)  First, Jan-Care had to submit a copy of its West Virginia license when it applied for the contract.  *See* R. 24-2 at 42.  Jan-Care did not have to submit a copy of its Kentucky ambulance license or certificate.  Second, West Virginia licensure was important enough to be a standalone factor when the VA was evaluating companies that bid.  *Id.* (stating that West Virginia licensure was a "Pass/Fail evaluation factor").  Kentucky licensure was not a standalone evaluation factor.  *Id.*  Third, the contract has a paragraph devoted to "quality assurance plans."  *Id.*  That paragraph discusses compliance only with West Virginia ambulance protocols, not Kentucky protocols.  *Id.*  If Kentucky licensure or certification were that important, the VA contract would probably have mentioned it instead of, or in addition to, West Virginia licensure.  Thus, no language in the contract, regulations, or statutes supports a finding that

---

[2] Trans-Star lists various other regulations that Jan-Care allegedly violated.  All but one of them are Medicare regulations.  *See* R. 9 at 5 (citing, for example, 42 C.F.R. § 410.41(a)(1), a Medicare regulation).  But Medicare regulations do not apply to Jan-Care's VA contract.  The VA pays the contract, not Medicare or Medicaid.  R. 24-2 at 2.  So Jan-Care is a VA contractor.  And the VA has its own regulations for VA contractors.  *See* 48 C.F.R. § 801.101.  As a result, VA regulations govern Jan-Care's contract.  *See id.*; R. 24-2 at 4 (listing the VA regulations included in the contract).

5

Kentucky licensure or certification is a condition of payment. For this reason, Trans-Star's FCA claims must fail. *See Hobbs*, 711 F.3d at 719 (reversing district court's order of summary judgment on FCA claims because alleged violations were not of conditions of payment).

### B. Trans-Star Fails to Plead its FCA Claims with Particularity.

And even if compliance with Kentucky licensure and certification were a condition of payment, Trans-Star's claims would also fail for failure to plead with particularity. An FCA relator must "specify the who, what, when, where and how" of the alleged fraud. *Sanderson*, 447 F.3d at 877 (internal quotation marks omitted); *see also Marlar*, 525 F.3d at 445. He must identify at least "a single false claim arising from an allegedly false invoice." *Sanderson*, 447 F.3d at 879. He or she must provide "concrete facts" about the claims, such as *when* any actual improper claims were submitted to the government. *Marlar*, 525 F.3d at 446; *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003) ("Failure to allege with any specificity . . . when [] any actual improper claims were submitted to the government is . . . fatal to a complaint." (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1312 (11th Cir. 2002) (internal quotation marks omitted)); *see also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 512–13 (6th Cir. 2007) ("Absent any information as to when the [fraudulent] reports were filed . . . [r]elator has failed to set forth a specific FCA violation."). He cannot merely describe a scheme and then state that claims requesting illegal payments "must have been submitted, were likely submitted or should have been submitted." *Sanderson*, 447 F.3d at 877–78.

Here, Trans-Star does not identify a single false claim or even an allegedly false invoice submitted to the VA. Instead, Trans-Star describes three instances where Jan-Care

6

allegedly transported a Kentucky resident without a Kentucky license or certificate of need. R. 26-1 at 15–16.  According to Trans-Star, Jan-Care would seek payment from the VA for these transports in the ordinary course of business.  *Id.* at 16.  Therefore, Trans-Star claims, Jan-Care must have asked the VA to pay for these three transports.  *Id.*  And because Jan-Care did not have a Kentucky license or certificate of need at the time, says Trans-Star, those claims were false or fraudulent.  *Id.*  In sum, Trans-Star alleges that Jan-Care *must have* submitted false claims to the VA.  But, as mentioned above, merely alleging that false claims "must have been submitted" does not meet Rule 9(b)'s standard.  *See Sanderson*, 447 F.3d at 877–78.  Trans-Star provides no "concrete facts" about when Jan-Care allegedly submitted these allegedly fraudulent claims to the government.  *See Marlar*, 525 F.3d at 446.  Jan-Care could have submitted the allegedly fraudulent claims to the VA the day after the transport, the next month, or the next year.  Or perhaps Jan-Care never submitted claims for those three transports.  As such, Trans-Star fails to plead its FCA claims with particularity and they are "properly dismissed" upon this ground as well.  *Sanderson*, 447 F.3d at 877–78.

### COUNT 6 - TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP

Trans-Star also brings three state-law claims.  First, Tran-Star claims that Jan-Care tortiously interfered with Trans-Star's prospective business relationship.  R. 9 at 17.  In Kentucky, "[o]ne who intentionally and improperly interferes with another's prospective contractual relation . . . is [liable] for the pecuniary harm resulting from loss of the benefits of the relation."  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 309 (6th Cir. 2011) (citing Restatement (Second) of Torts § 766B (1979)).  Here, Trans-Star argues that Jan-Care wrongfully interfered with Trans-Star's prospective business relationship *with Jan-Care*

7

when Jan-Care began performing the Kentucky transports itself. *See* R. 9 at 11, 17. But, under Kentucky law, one cannot tortiously interfere with *one's own* prospective business relationship. Kentucky follows the Restatement (Second) of Torts. *Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988). And the Restatement specifies that one must improperly interfere "with *another's* prospective . . . relation" to be liable. *See* Restatement (Second) of Torts § 766B (1979) (emphasis added); *see also Seye v. Cmty. Yellow Cab*, No. CIV.A. 10-234-WOB-CJS, 2013 WL 1332430, at *7 (E.D. Ky. Mar. 29, 2013) (Report & Recommendation adopted by 2013 WL 1332417) (stating tortfeasor must "cause a *third party* not to . . . enter into or continue a business relationship with another party"); *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1080 (W.D. Ky. 1995) (stating that Kentucky courts would not adopt tort of intentional interference with the plaintiff's own performance of its contract). Under Trans-Star's theory, Jan-Care interfered with Jan-Care's own business relationship with Trans-Star. Indeed, Trans-Star's tortious interference claim "fail[s] to allege that a third party was involved in any capacity." *Seye*, 2013 WL 1332430, at *8. A crucial element of tortious interference is not satisfied.[3] *Id.* Thus, this claim must be dismissed.

## COUNT 7 - UNJUST ENRICHMENT

Second, Trans-Star claims that Jan-Care has been unjustly enriched from "the willful violation of Kentucky's [ambulance service] statutes and regulations." R. 9 at 17–18. Trans-Star alleges that Jan-Care "conferred a benefit upon *itself* at the expense of Trans-Star" when

---

[3] Under Trans-Star's theory, Jan-Care would be liable in tort for failing to perform or renew its own contract with Trans-Star. Holding Jan-Care liable for failing to renew its own contract goes against long-standing principles of freedom of contract. And liability for failing to perform one's current contract is more appropriately remedied using contract law.

it performed Kentucky transports without a Kentucky license. R. 9 at 18 (emphasis added). But "a claim for unjust enrichment requires that a plaintiff prove that *she* conferred a benefit upon the defendant." *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (analyzing Kentucky cases) (emphasis added). Here, Trans-Star does not allege that Trans-Star conferred a benefit upon Jan-Care. As such, Trans-Star's unjust enrichment claim must fail. *See, e.g.*, *Dixie Fuel Co., LLC v. Straight Creek, LLC*, No. CIV. 08-326-GFVT, 2011 WL 845828, at *5 (E.D. Ky. Mar. 8, 2011); *see also Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (holding dismissal proper where plaintiff's unjust enrichment claim failed as a matter of law).

## COUNT 8 – ACTION UNDER KRS 446.070

Finally, Trans-Star seeks to recover for Jan-Care's alleged violation of Kentucky's ambulance laws and regulations through KRS § 446.070. KRS § 446.070 allows an injured person to recover damages from another's violation of any statute. KRS § 446.070 "merely codifies the common law concept of negligence per se." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000). As a result, the statute applies only if the plaintiff is a member of the class of persons that statute was intended to protect *and* the injury suffered is one the law was designed to prevent. *See Carman v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997).

Here, the first question is whether Kentucky's ambulance regulations were intended to protect Trans-Star. For an answer, the Court looks to KRS § 216B.010, which states the legislature's purpose for licensing ambulance companies. That section states that "[t]he General Assembly finds that the licensure of health facilities and health services is a means

9

to insure that the *citizens of this Commonwealth* will have safe, adequate, and efficient medical care." KRS § 216B.010 (emphasis added). In other words, ambulance regulations exist to protect people who live in Kentucky from physical injury due to underqualified providers. Trans-Star, a company, is not a Kentucky "citizen" who would receive "safe, adequate, and efficient medical care." And nowhere does the legislature's statement of purpose mention companies. *See* KRS § 216B.010. So Trans-Star is not a member of the class of persons this statute was intended to protect. *See Carman*, 949 S.W.2d at 570.

Trans-Star points to KRS § 311A.020, which outlines the "powers and duties" of the Kentucky Board of Emergency Medical Services ("KBEMS"). The KBEMS licenses ambulance companies. *See* KRS § 311A.030. KRS § 311A.020 states that the KBEMS shall "[e]xercise all of the administrative functions of the state . . . in the regulation of the emergency medical services system." KRS § 311A.020, however, does not specify a class of persons the statute is intended to protect. The general statement of purpose for the statutory scheme discussed above, KRS § 216B.010, still applies. KRS § 311A.030 is a provision about "licensure of health facilities and health services." *See* KRS § 216B.010. KRS § 311A.020 says nothing to change that.

Moreover, Trans-Star does not point to any evidence that the legislature intended to prevent Trans-Star's alleged injury: the loss of a contract or profits. *See Carman*, 949 S.W.2d at 570 (stating that, to recover under KRS § 446.070, the plaintiff's injury must also be one the regulation was designed to prevent). Instead, as discussed above, the legislature wanted to protect people in Kentucky from physical injuries due to poor medical treatment. Therefore, Trans-Star fails to show that KRS § 446.070 applies to its case.

Trans-Star urges the Court to look at a definition in the statutory scheme that allegedly gives Trans-Star a "cause of action." R. 27 at 10–11. Trans-Star points to KRS § 216B.015(3), the definition of an "affected person." An affected person includes "health facilities located in the health service area in which the project is proposed to be located which provide services similar to the services of the facility under review [by the Kentucky Cabinet of Health and Family Services]." KRS § 216B.015(3). Indeed, Trans-Star "provide[s] services similar to" Jan-Care's. But the statute does not go on to give Trans-Star a cause of action in court. The definition itself limits any "cause of action" to the ability to request a state administrative hearing. Specifically, an "affected person" can request a public hearing within 15 days after the Kentucky Secretary of Health and Family Services has started reviewing an application for a Kentucky license or certificate of need. KRS § 216B.085. The definition of "affected person" gives entities that are *not otherwise protected* by the statutory scheme—competitors—the ability to request an administrative hearing. If the legislature intended for competitors to sue under KRS § 446.070, such a separate procedure—*i.e.*, hearings—would be unnecessary. Indeed, as an "affected person," Trans-Star can request an administrative hearing about Jan-Care in front of the Cabinet. (And Trans-Star has. *See* R. 32.). But the definition of "affected person" does not confer upon Trans-Star the right to sue Jan-Care under KRS § 446.070. Therefore, this count must also be dismissed.

## COUNT 4 – DECLARATORY JUDGMENT

Trans-Star also asks for declaratory judgment. R. 9 at 16. Courts deny declaratory relief if an alternative remedy is better or more effective. *Grand Trunk W. R. Co. v. Consol.*

*Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Here, the better alternative remedy is merely to adjudicate the plaintiff's seven other claims. *See, e.g.*, *Younglove Const., LLC v. PSD Dev., LLC*, No. 3:08CV1447, 2010 WL 3515603, at *9 (N.D. Ohio Sept. 3, 2010) (finding that allowing the parties to address claims in the "normal course of [the] litigation" was more effective than declaratory judgment). Allowing the parties to address claims in the normal course of litigation results in dismissal. Because dismissal settles the controversy, declaratory judgment is not more effective. Thus, there is no need for declaratory judgment.

## COUNT 5 – INJUNCTIVE RELIEF

Finally, Trans-Star asks for temporary and permanent injunctive relief. R. 9 at 16. But injunctive relief is inappropriate when the plaintiff is not entitled to relief on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (stating that party seeking preliminary injunction must show likelihood of success on the merits). As discussed above, Trans-Star is not entitled to relief on the merits. Thus, injunctive relief is inappropriate.

## CONCLUSION

None of Trans-Star's claims survive Jan-Care's motion to dismiss. As a result, Trans-Star's complaint must be dismissed.

Accordingly, it is **ORDERED** that:

(1) The defendant's motion to dismiss, R. 24, is **GRANTED**. Counts 1 through 8 of the plaintiff's amended complaint, R. 9, are **DISMISSED WITH PREJUDICE**.

(2) All other pending motions, including the plaintiff's motion for a preliminary injunction, R. 10, and the plaintiff's motion to hold the case in abeyance, R. 22, are **DENIED AS MOOT**.

(3) This case is **STRICKEN** from the Court's active docket.

(4) A separate Judgment will issue with this Order.

This the 11th day of May, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge